Case 4:23-cv-01194 Document 82 Filed on 04/04/25 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
April 04, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STORE MASTER FUNDING XXIX, LLC, | § § § | |
|     *Plaintiff,* | § § | |
| v. | § § | Case No. 4:23-cv-1194 |
| TRIANGLE CAPITAL PROPERTIES, LLC, and ROYAL TEXAS, LLC, | § § § § § | |
|     *Defendants* | § § § | |
| TRIANGLE CAPITAL PROPERTIES, LLC, | § § § | |
|     *Counter-Plaintiff and Third-Party Plaintiff* | § § § | |
| v. | § § | |
| STORE MASTER FUNDING XXIX, LLC, STORE CAPITAL, LLC F/K/A STORE CAPITAL CORPORATION, CAJUN OPERATING COMPANY and CHURCH'S HOUSTON HOLDINGS, LLC, | § § § § § § § | |
|     *Counter-Defendant and Third-Party Defendants* | § § | |

### JUDGE PALERMO'S REPORT AND RECOMMENDATION[1]

This is a breach of commercial lease case. Before the Court is Third-Party Defendants STORE Master Funding XXIX, LLC ("STORE Master") and STORE

---

[1] On April 2, 2024, the district judge assigned to this case referred it to this Court for all pretrial purposes pursuant to 28 U.S.C. § 636(b). Order, ECF No. 30. A motion to dismiss is appropriate for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1).

Capital, LLC's ("STORE Capital") (collectively "STORE entities") motion to dismiss, ECF No. 69,[2] and Third-Party Defendants Cajun Operating Company ("Cajun") and Church's Houston Holdings, LLC's ("Church's") ("Cajun entities") motion to dismiss, ECF No. 75.[3,4] Having carefully reviewed the pleadings, motions, and applicable law, the Court determines that the STORE entities' motion to dismiss should be granted because of Third-Party Plaintiff Triangle Capital Properties, LLC's ("Triangle") failure to distinguish between the STORE entities in its amended third-party complaint.[5] Additionally, the Triangle's dispute with Cajun, should be severed and transferred to Judge Hanks's court to be resolved along with the currently stayed case involving the same lease agreement at issue as the one here.[6]

I. **BACKGROUND**

On April 26, 2016, STORE Master's predecessor, STORE Master Funding VIII, LLC, as lessor, and Triangle, as lessee, entered into a Master Lease Agreement ("Master Lease" or "the lease") for twenty-four properties located in Texas. ECF

---

[2] Triangle filed a response, ECF No. 74. The STORE entities filed a reply, ECF No. 76.

[3] Triangle filed a response, ECF No. 77. The Cajun entities filed a reply, ECF No. 78.

[4] Both motions seek to dismiss the third-party complaint, ECF No. 68.

[5] However, Triangle should be granted leave to amend its amended third-party complaint to rectify its pleading deficiencies.

[6] That case is *Cajun Global, LLC, et al. v. Royal Texas, et al.*, No. 4:22-cv-1719.

No. 68 ¶ 1. The Master Lease states a "Base Monthly Rental" to be paid for the properties. ECF No. 69-1 § 1.05. In addition, pursuant to the lease's terms, the lessee is not permitted, without advance written notice to the lessor, "to alter the exterior, structural, plumbing or electrical elements of the Properties in any manner without the consent of the Lessor." *Id.* § 7.02. Triangle paid rent in full for all twenty-four sites through most of 2022. ECF No. 68 ¶ 8. However, Triangle alleges that it did so in reliance on "STORE's" representations that Triangle was permitted to renovate six of its locations for a fast-food pizza chain, 7Pie® ("7Pie® Renovation Locations"), and "break out the 7Pie® Renovation Locations into separate specific rent amounts moving forward." *Id.* Triangle engaged in renovations on several of the locations and points to several email and telephonic communications with "STORE" in which "STORE" allegedly indicated approval of the renovations. *Id.* ¶¶ 4–8.

Triangle alleges that "soon after consenting to the breakout of the new rent for the 7Pie® Renovation Locations, and despite the many months of knowledge, acquiescence, and consent to Triangle's development of the 7Pie® Renovation Locations, STORE suddenly reversed course in late February 2023." *Id.* ¶ 10. "Store Master Funding XXIX subsequently sued Triangle…within one month and locked Triangle out of the 7Pie® Renovation Locations, despite all of the substantial money, time[,] and effort Triangle had undertaken to develop them." *Id.* ¶ 11.

Triangle further alleges that while "STORE" was approving of the renovations, "STORE" was also negotiating a takeover lease with Cajun. *Id.* ¶ 13.

STORE Master sued Triangle for breach of the Master Lease and unjust enrichment, citing, among other reasons, Triangle's failure to pay the required rent and failing to obtain the required written notice prior to making renovations. ECF No. 1 ¶¶ 44, 52–54. Triangle countersued STORE Master and sued STORE Capital as a third-party defendant, alleging that "STORE" breached its alleged contract regarding the breakout of the new rent for the 7Pie® Renovation Locations, and raising claims for quantum meruit, unjust enrichment, promissory estoppel, fraud, conspiracy to commit fraud, and negligent misrepresentation. ECF No. 68 at 14–20. Triangle also sued the Cajun entities as third-party defendants for tortious interference with existing contracts, tortious interference with prospective business relations, quantum meruit, and unjust enrichment. *Id.* at 21–22.

## II.  LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

The complaint must include more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). A complaint must "contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the pleaded factual contents allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

The ultimate question "is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 590 (S.D. Tex. 2012). "[I]n considering a motion to dismiss under Rule 12(b)(6), a complaint must be liberally construed in favor of the plaintiff and all well-pleaded facts taken as true." *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 665 (S.D. Tex. 2010). "[C]ourts are required

to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Farshchi v. Wells Fargo Bank, N.A.*, Civ. Action No. H-15-1692, 2016 WL 2858903, at *2 (S.D. Tex. May 13, 2016) (citing *Flynn v. State Farm Fire & Cas. Ins. Co. (Tex.)*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009)). "A complaint that 'lumps together' multiple defendants' conduct fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 12(b)(6)." *City Nat'l Rochdale Fixed Income Opportunities (Ireland) Ltd. v. Am. Gen. Life Ins. Co.*, No. 3:17-CV-2067-S (BT), 2018 WL 4732431, at *2 (N.D. Tex. Sept. 13, 2018), *adopted*, 2018 WL 4725249 (N.D. Tex. Sept. 30, 2018) (citing *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal citation omitted)).

### III. STORE MASTER AND STORE CAPITAL'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE TRIANGLE FAILS TO DISTINGUISH BETWEEN THE STORE ENTITIES.

In Triangle's third-party complaint, Triangle brings allegations against "Store Master Funding XXIX…and…its Parent, Store Capital, LLC f/k/a Store Capital Corporation (collectively ("STORE"))." ECF No. 68 at 1–2. Throughout the third-party complaint, Triangle refers to "STORE" when alleging actions taken by either STORE Master, STORE Capital, LLC, or both.[7]

---

[7] For example, "STORE emailed Triangle asking about the conversion of the locations to the new 7Pie®restaurants," ECF No. 68 at 6; "STORE responded with detailed questions about projections by location, costs for various types of labor and other information," *id.* at 7; and "STORE also had many telephone conversations with Triangle throughout the spring of 2022 and into early 2023," *id.* at 8–9.

The STORE entities argue that these collective allegations are insufficient to state a claim against STORE Capital because parent and subsidiary corporations are generally considered separate and distinct persons as a matter of law. ECF No. 69 at 12 (citing *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 229 (Tex. App. 2019)). Triangle argues that emails from Lyena Hale ("Hale") and Michael Volk ("Volk"), sent from STORE Capital email addresses and with STORE Capital signature blocks, indicate that they were acting on behalf of STORE Capital.[8]

The Court agrees that the allegations, as pled, are insufficient to state a claim against STORE Capital—or against STORE Master, for that matter. Even if the emails (and certain other alleged communications) from Hale and Volk are attributable to STORE Capital, Triangle does not allege that the statements attributable only to Hale and Volk (and therefore STORE Capital) are adequate to state a claim under any of Triangle's causes of action, nor does the Court discern any such adequacy. In addition, the other allegations refer merely to "STORE," making it impossible for the Court to determine which of the STORE entities to attribute each of the other statements/acts/omissions that make up the alleged wrongs. Even assuming STORE Master is "a wholly-owned subsidiary of [STORE

---

[8] Triangle further alleges that Hale's statement in the email referring to "our committee" establishes that a STORE Capital committee made the decision to "decline[ ] further conversations on the 6 assets." ECF No. 74 at 14.

Capital][,] [that relationship] does not defeat their presumably separate corporate identities or the necessity of making separate allegations as to each entity." *Am. Gen. Life Ins. Co.*, 2018 WL 4732431, at *3 (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006)).

Triangle raised an agency argument in its response, asserting that "Texas law recognizes that companies may act through agents," and "the law is replete with examples of corporations that act as agents for others." ECF No. 74 at 14 (citing *In re Credit Suisse First Bos. Mortg. Cap., LLC*, 273 S.W.3d 843, 849 (Tex. App.—Hous. [14th Dist.] 2008), *mandamus denied* (Oct. 23, 2009)). However, "[u]nder Texas law, the 'essential element of an agency relationship is the right of control.'" *Garcia v. Vasilia*, Civ. Action H-17-1601, 2019 WL 4105559, at *9 (S.D. Tex. Aug. 29, 2019) (quoting *In re Carolin Paxson Advert., Inc.*, 938 F.2d 595, 598 (5th Cir. 1991)). Further, "when determining whether one entity is the *agent* of another, it is necessary to consider 'whether the [parent] exercises day-to-day control over the [subsidiary]." *Janvey v. Libyan Invest. Auth.*, 840 F.3d 248, at 264 (5th Cir. 2016) (emphasis and brackets in original) (quoting *Dale v. Colagiovanni*, 443 F.3d 425, 430 (5th Cir. 2006)). "Triangle's suggestion that there is an agency relationship based on its inference that Hale's February 23, 2023 email referencing "our

committee"[9] necessarily refers to a STORE Capital committee does little to tell the Court how STORE Capital has the requisite right of control over STORE Master. "Absent proof of the right to control, [Triangle] has not stated sufficient facts to demonstrate an agency relationship between [STORE Master] and [STORE Capital]." *Hee Sook Nam v. Tex Net, Inc.*, No. 3:20-CV-1132-S, 2021 WL 535852, at *5 (N.D. Tex. Feb. 12, 2021); *Garcia*, 2019 WL 4105559, at *9.

Furthermore, for allegations of fraud, "[t]he requirements of Rule 9(b) must be met as to each [Counter-]Defendant [and Third-Party Defendant], and it is 'impermissible to make general allegations that lump all [those parties] together.'" *U.S. ex rel. Frey v. Health Mgmt. Sys., Inc.*, No. 4:21-CV-02024, 2023 WL 2563239, at *7 (S.D. Tex. Feb. 19, 2023) (Palermo, J.), *adopted*, 2023 WL 2564342 (S.D. Tex. Mar. 17, 2023) (Ellison, J.) (first quoting *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 470–71 (N.D. Tex. 2012); and then citing *United States* v. *Kindred Healthcare, Inc.*, No. 1:18-CV-00806-RP, 2020 WL 7771217, at *6 (W.D. Tex. Dec. 30, 2020), *adopted*, 2021 WL 8083348 (W.D. Tex. Jan. 29, 2021)). "Because the Amended [Third-Party] Complaint lumps the [STORE entities] together in an attempt to establish fraud, [Triangle] may only satisfy Rule 9(b) if the Amended Complaint elsewhere also contains adequate allegations that the [STORE entities]

---

[9] "We discussed the partial rent again internally and our committee has declined further conversations on the 6 assets." ECF No. 68 at 11.

are alter egos of each other." *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489990, at *11 (W.D. Tex. Oct. 23, 2014) (citing *Infomart (India), Pvt., Ltd. v. Metrowerks Corp.*, No. 3:04-CV-1299-N, 2005 WL 292433, at *4 (N.D. Tex. Feb. 7, 2005) (internal citations omitted)); *Afshani v. Spirit Realty Cap., Inc.*, No. 3:19-CV-01421-X, 2020 WL 1139884, at *4 n.13 (N.D. Tex. Mar. 9, 2020) ("Because the Amended Complaint lumps the Defendants together in an attempt to establish fraud, Plaintiff may only satisfy Rule 9(b) if the Amended Complaint elsewhere specifies each Defendant's role in the alleged fraud…" (internal citation omitted)).

The STORE entities' motion to dismiss should therefore be granted, and Triangle should be granted leave to amend its amended third-party complaint to address the deficiencies identified above.

IV. **CAJUN AND CHURCH'S MOTION TO DISMISS SHOULD BE DENIED WITHOUT PREJUDICE AND THEIR DISPUTE WITH TRIANGLE SHOULD BE SEVERED AND TRANSFERRED TO JUDGE HANKS' COURT.**

As previously stated, Cajun and Triangle currently have a case ("2022 Action") before Judge Hanks that involves the same Master Lease at issue in this case ("2023 Action"). In the 2022 Action, Triangle filed counterclaims and an application for temporary restraining order, preliminary injunction, and permanent injunction against Church's, alleging that Church's "willfully and intentionally interfered with the contract between STORE and Triangle by attempting to persuade S[TORE] to assign the Master Lease to [Church's]" and seeking injunctive relief "to

stop [Cajun] from continued, knowing, and willful interference with the Leases," including the Master Lease. ECF No. 75 at 10 (quoting Case 4:22-cv-1719, ECF No. 9 at 1, ¶¶ 35, 39, 43).

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Landry's, LLC v. Landry Distilling, Inc.*, No. 4:23-CV-01314, 2023 WL 3997162, at *3 (S.D. Tex. May 22, 2023) (Ellison, J.) (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 677–78 (5th Cir. 2011) (internal citation and quotation marks omitted)).[10] "The court in the second filed action may instead 'dismiss the case, stay the case, or transfer the case to the court in the first filed action.'" *My Clear View Windshield Repair, Inc. v. GEICO Advantage Ins. Co.*, No. 4:16-CV-02840, 2017 WL 2591339, at *6 (S.D. Tex. Feb. 14, 2017) (quoting *Dxp Enters., Inc. v. Hill*, 4:15-CV-3471, 2016 WL 4159756, at *3 (S.D. Tex. Aug. 3, 2016) (internal quotation omitted)); *Joseph v. Signal Int'l L.L.C.*, 1:13-CV-324, 2014 WL 12721391, at *2 (E.D. Tex. Dec. 8, 2014) (quoting *Carter v. Dep't of Veterans Affs.*, 228 F. App'x 399, 402 (5th Cir. 2007) (per curiam)) ("In such a case, the district court in which the later action was

---

[10] The first-to-file rule is "grounded in principles of comity…The federal courts long have recognized that…courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each other['s] affairs." *Hardwick v. Factor*, No. CIV.A. H-10-5249, 2011 WL 1831706, at *2 (S.D. Tex. May 9, 2011) (internal quotation marks omitted) (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (internal citation omitted)).

filed may dismiss, stay, or transfer the suit in order to avoid duplicative litigation and enforce the principle of comity.").[11] Refusal to transfer in such a case may constitute an abuse of discretion. *Cadence Bank v. GlobalVision Sys., Inc.*, 700 F. Supp. 3d 461, 463 n.1 (N.D. Miss. 2023) (citing *Save Power*, 121 F.3d 947, for the proposition that the district judge's refusal to transfer the case to another judge in the same district based on the first-to-file rule was an abuse of discretion).

In determining whether to apply the first-to-file rule, the Court must answer two questions: (1) whether the two pending actions are so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should take the case. *Joseph*, 2014 WL 12721391, at *2 (quoting *Datamize, Inc. v. Fid. Brokerage Servs., LLC*, 2:03-cv-321-DF, 2004 WL 1683171, at *3 (E.D. Tex. Apr. 22, 2004) (internal citation omitted)); *Hardwick*, 2011 WL 1831706 (quoting *Excel Music, Inc. v. Simone*, No. 95-3626, 1996 WL 5708, at *5 (E.D. La. Jan. 5, 1996)). The second-filed court only considers the first question.

---

[11] "Given the aim of the first-to-file rule to promote sound judicial administration, district courts are 'free to raise the issue of the first-to-file rule *sua sponte*.'" *Ratliff v. La. State*, Civ. Action No. 24-2170, 2024 WL 4346513, at *2 (E.D. La. Sept. 30, 2024) (quoting *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 258 n.1 (4th Cir. 2013)). "Other district courts in the Fifth Circuit have recognized the same and applied the rule *sua sponte*." *Id.* (first citing *Meganathan v. Signal Int'l L.L.C.*, 1:13-CV-497, 2015 WL 13906343, at *2 (E.D. Tex. June 17, 2015); and then citing *S&B Eng'rs & Constructors, Ltd. v. Alstom Power, Inc.*, No. 04-cv-150, 2004 WL 2360034, at *1 (N.D. Tex. Oct. 19, 2004)).

*Cedarstone Indus., LLC v. C4, LLC*, No. 4:21-CV-02719, 2022 WL 369830, at *3 (S.D. Tex. Feb. 7, 2022) (Palermo, J.).[12, 13]

"Substantial overlap is not complete overlap; complete identity of parties and issues need not be shown to invoke the first-to-file rule." *GEICO Advantage*, 2017 WL 2591339, at *6 (internal quotation marks omitted) (quoting *Dxp Enters.*, 2016 WL 4159756, at *2 (internal citation omitted)). "In deciding if a substantial overlap exists, courts examine factors such as whether the core issue is the same and whether much of the proof adduced would be identical." *Id.* (citing *Sweet Little Mex. Corp.*, 665 F.3d at 678 (internal citations omitted)). "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* (quoting *Save Power Ltd.*, 121 F.3d at 950–51 (internal quotation and quotation marks omitted)).

There is substantial overlap between the 2022 Action and the 2023 Action. Both cases involve a conflict between Triangle and the Cajun entities over the same

---

[12] The first-filed court addresses the second question. *Cedarstone Indus.*, 2022 WL 369830, at *3 (first citing *Save Power*, 121 F.3d at 950; and then citing *Novak Druce Connolly Bove & Quigg, LLP v. Arochi*, No. H-18-3490, 2019 WL 4222700, at *5 (S.D. Tex. Sept. 5, 2019)).

[13] "Where compelling circumstances exist, courts need not adhere to the first-to-file rule." *Landry's*, 2023 WL 3997162, at *4. However, "[t]he issue of whether compelling circumstances exist is properly left for the transferee court to decide. 'As the second-filed court, th[is] Court's limited role is to determine whether there is substantial overlap between the two suits.'" *Id.* (quoting *Platt v. Nash*, No. 4:16-cv-00294, 2016 WL 6037856, at *2 (E.D. Tex. Oct. 14, 2016)).

Master Lease. ECF No. 75 at 10 (quoting Case 4:22-cv-1719, ECF No. 9 at 1, ¶¶ 35, 39, 43). In fact, in both cases, Triangle asserts a tortious interference with contract claim against the Cajun entities over their alleged actions regarding the Master Lease. *Id.* Although Triangle asserts that there is no substantial overlap because the 2023 Action involves the 7Pie® Renovation Locations and thus are "separate and distinct from the Church's Franchise and broader lease assignment issues at issue in the other litigation," ECF No. 77 at 19, Triangle's amended third-party complaint specifically alleges that "Cajun is liable to Triangle for tortious interference with the lease contract between Triangle and STORE, *including all sites under the lease between Triangle and STORE* and the specific 7Pie® Renovation Locations, both *under the Master Lease with STORE* and alternatively a new agreement or amendment as to the 7Pie® Renovation Locations." ECF No. 68 ¶ 41 (emphases added). Thus, despite the inclusion of the 7Pie® Renovation Locations, this Court's resolution of the claims against the Cajun entities could very well produce inconsistent rulings on Triangle and the Cajun entities' rights and obligations under the Master Lease.

For the Court to transfer only Triangle's claims against the Cajun entities, those claims must first be severed from the rest of the case. "[A] 'trial court has broad discretion to sever issues to be tried before it.'" *Joseph*, 2014 WL 12721391, at *3 (first quoting *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir.

1994) (internal citation omitted); and then citing *United States v. O'Neil*, 709 F.2d 361, 366 (5th Cir. 1983)). The Court "has authority under Rule 21 to sever [those claims] even though [the Cajun entities] did not specifically request such relief." *Id.* (first citing *Brunet*, 15 F.3d at 505; and then quoting *United States v. Nat'l R.R. Passenger Corp.*, No. Civ.A 86-1094, 2004 WL 1335723, at *6 (E.D. Pa. June 15, 2004)).

Some district courts in this Circuit have applied a five-factor test for severance. *E.g.*, *Bazan Painting Co. v. Brentech, Inc.*, No. 4:21-CV-03066, 2022 WL 19333368, at *2 (S.D. Tex. Oct. 27, 2022) (Ellison, J.) (quoting *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (internal citation omitted)); *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, No. 3:11–CV–2205–D, 2012 WL 4442368, at *1 (N.D. Tex. Sept. 26, 2012) (first quoting *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (S.D.N.Y. 1999); and then citing *Aspen Tech., Inc. v. Kunt*, No. 4:10–cv–1127, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011)).[14] However, the Fifth Circuit has noted that "the severance inquiry is different—and more focused on judicial efficiency—when it is combined with a

---

[14] The five factors are "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Rolls Royce*, 775 F.3d at 680 (internal quotation marks omitted) (quoting *Morris*, 37 F. Supp. 2d at 580).

section 1404 motion to transfer than when the severed case would remain in the original judicial district." *Rolls Royce*, 775 F.3d at 680.

Here, the severed case would remain in the original judicial district, which alleviates many of the concerns about judicial inefficiency. In fact, the severance, by preventing duplicative litigation over the Master Lease, would serve to enhance judicial economy. Thus, the dispute between Triangle and the Cajun entities should be severed and transferred to Judge Hanks's court.

## V. CONCLUSION

Therefore, the Court **RECOMMENDS** that the STORE entities' motion to dismiss, ECF No. 69, be **GRANTED**. If this Report and Recommendation is adopted, and any Party objects,[15] Triangle is granted leave to amend its amended third-party complaint within 21 days of the order adopting, or within 21 days of this Report and Recommendation if there are no objections. No further amendments are allowed. In addition, the Court **RECOMMENDS** that Cajun's motion to dismiss, ECF No. 75, be **DENIED WITHOUT PREJUDICE** and Triangle's third party complaint against the Cajun entities, ECF No. 68, be **SEVERED** from this case and **TRANSFERRED** to Judge Hanks's court.

**The Parties have fourteen days from service of this Report and**

---

[15] Because the Report and Recommendation portion of this opinion applies only to the dispute between the STORE entities and Triangle, and the Cajun entities are no longer part of this case following severance and transfer, any objections will only be filed by the STORE entities or Triangle.

Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on April 10, 2025, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge